FILED & ENTERED

JUN 15 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Gabriel David Guerrero and<br>Olivia Luna Guerrero,<br><br>Debtor(s). | Case No.: 2:25-bk-14063-BB<br><br>CHAPTER 7<br><br>**ORDER DENYING DEBTORS' EMERGENCY EX PARTE MOTION FOR (1) IMMEDIATE TEMPORARY RESTRAINING ORDER PROHIBITING ALL FORECLOSURE ACTIVITY AND ENJOINING ENFORCEMENT OF THE JOINT STIPULATION BETWEEN CHAPTER 7 TRUSTEE, TIMOTHY YOO, AND SUNFLOWER EQUITY, LLC; (2) ORDER DECLARING THE SUNFLOWER EQUITY, LLC LOAN ILLEGAL AND VOID UNDER FEDERAL AND CALIFORNIA LAW; (3) RECONVERSION OF CASE FROM CHAPTER 7 TO CHAPTER 11 PURSUANT TO 11 U.S.C. SECTION 1112(d); AND (4) ORDER GRANTING DEBTORS 30 DAYS TO RETAIN NEW COUNSEL**<br><br>(No hearing required) |

//

//

-1-

The Court, having reviewed and considered the Debtors' "Emergency Ex Parte Motion for (1) Immediate Temporary Restraining Order Prohibiting All Foreclosure Activity and Enjoining Enforcement of the Joint Stipulation between Chapter 7 Trustee, Timothy Yoo, and Sunflower Equity, LLC; (2) Order Declaring the Sunflower Equity, LLC Loan Illegal and Void under Federal and California Law; (3) Reconversion of Case from Chapter 7 to Chapter 11 Pursuant to 11 U.S.C. Section 1112(d); and (4) Order Granting Debtors 30 Days to Retain New Counsel" filed June 12, 2026 (Docket No. 159) (the "Emergency Motion"), hereby makes the following findings of fact and conclusions of law:

1. The Emergency Motion seeks injunctive relief:  a temporary restraining order prohibiting all foreclosure activity.  As the Court explained to debtor Gabriel David Guerrero when he appeared at a hearing in an unrelated matter on June 2, 2026, in order to obtain injunctive relief, a debtor must first file an adversary proceeding and bring a motion for injunctive relief in that proceeding and then make the appropriate showing.  See In re Van Ness, 399 B.R. 897 (Bankr. E.D. Cal. 2009) ("Rule 7001 mandates that an injunction or other equitable relief be obtained by way of adversary proceeding or plan confirmation, rather than by way of a "contested matter" motion . . . .  It is settled that a Rule 9014 motion cannot be used to circumvent the requirement of an adversary proceeding").

2. The debtors have not filed an adversary proceeding seeking injunctive relief in this case.  Therefore, any request for injunctive relief contained in the Emergency Motion must necessarily be denied.

3. In addition, the Emergency Motion seeks a declaration that the Sunflower Equity, LLC ("Sunflower") loan is illegal and void.  Pursuant to Federal Rules of Bankruptcy Procedure 7001(b) and (i), the debtors must bring an adversary proceeding to obtain this form of relief as well.  Expeditors Int'l v. Citicorp. N. Am. (In re Colortran), 218 B.R. 507 (Bankr. 9th Cir. 1997)

-2-

("Bankruptcy Rule 7001 (formerly rule 701) requires a bankruptcy trustee to initiate adversary proceedings to 'determine the validity, priority, or extent of a lien or other interest in property.' . . . In an analogous case, under former Rule 701, the Ninth Circuit Court of Appeals found that a lien may be avoided only if the trustee has filed an adversary proceeding") (citing In re Commercial Western. Fin. Corp., 761 F.2d 1329, 1336 (9th Cir. 1985)).

4. Once again, as the debtors have not commenced an adversary proceeding, the Court would not be able to grant the requested relief even if it were warranted on these facts.  Moreover, this is not a form of relief that could be obtained by filing an ex parte motion even in the context of an adversary proceeding.  Debtors would need to file a complaint, obtain and serve a summons, give the lender an opportunity to respond to the complaint and either prevail on the merits of their allegations after an evidentiary hearing or bring and prevail on a motion for summary judgment in which they demonstrated that no genuine issues of material fact prevented the issuance of a summary adjudication in their favor.

5. The Emergency Motion argues further that the Court's decision to grant relief from stay was based on material misrepresentations contained in Sunflower's motion for relief from stay, which included, among other things, an appraisal that deflated the value of the property, an invalid lien asserted by the IRS that appeared to eliminate any equity in the property and prejudicial information provided as to Mr. Guerrero's unrelated guilty plea.  See Emergency Motion at pp. 4-7.  This is entirely inaccurate, as a review of the Court's records and files in this bankruptcy case reflects.  None of these alleged misrepresentations led the Court to grant relief from stay in this case.

6. The debtors filed this case on May 15, 2025.  Sunflower first moved for relief from stay with regard to the property that is the subject of the Emergency Motion (the "Property") on or about July 29, 2025.  The Court conducted the first hearing on that motion (the "Sunflower Motion") on August 19, 2025.

7. At the August 19, 2025 hearing, the Court refused to grant the Sunflower Motion, stating, "Court is not yet ready to conclude that there is no realistic prospect of a reorganization within a reasonable period and, if the debtor's representations are true with regard to the origins of the tax lien, there may in fact be substantial equity for the estate in the property."  The Court therefore continued the hearing on the Sunflower Motion to October 8, 2025.

8. At the October 8, 2025, hearing on the Sunflower Motion, the Court asked the debtor what, if any, additional progress had been made in negotiations with the IRS in an effort to cause the IRS to reduce the amount of its claim?  Debtors' counsel reported that the debtor was trying to find financing and requested a further continuance of the hearing on the Sunflower Motion.  The Court granted that request and continued the hearing on the Sunflower Motion to December 11, 2025, but instructed the debtors that, in order to preserve the value of Sunflower's collateral, they would need to pay the real property taxes that become delinquent on December 10, 2025, or the Court would grant relief from stay at the continued hearing.

9. At the December 11, 2025 hearing on the Sunflower Motion, the Court offered the following tentative ruling:

    a. At prior hearing, debtor's counsel reported that recent appraisal showed there was not enough value in the property to satisfy the liens against it and produce equity for the estate.  The status report that the debtor filed in connection with matter no. 6 [the case management conference] shows the same thing.  Debtor notes that

the IRS failed to file a proof of claim, but it also states that the IRS has a secured tax LIEN for more than $4.2M.  According to that same report, the value of the property is approximately $4.3M and the senior lien is for approximately $2.5M.  Thus, there is no equity in the property.  Debtor has been trying to refinance, but does not appear to have made any progress and the Court takes judicial notice of the positions advanced by the IRS in response to the defendant's sentencing memorandum.  It does not appear likely that the IRS will be reducing the amount of its claim at any point in the near future.

b.  Grant motion for relief under section 362(d)(2).  Court is persuaded that there is no reasonable likelihood of a reorganization within a reasonable period and that there is no equity in the property for the estate.

10.  However, notwithstanding the foregoing tentative ruling, the Court did not grant Sunflower relief from stay at that hearing.  Instead, based on the fact that the IRS had filed a proof of claim on December 9 or 10 in which it referred to its claim as being "unsecured," the Court continued the hearing on the Sunflower Motion to January 20, 2026.

11.  At the January 20, 2026, hearing on the Sunflower Motion, the Court raised the following question in its tentative ruling, "In light of [the IRS's] amended proof of claim, is debtor now in a position to file a plan or does debtor intend to proceed in a different manner?  If debtor intends to file a plan, set deadline for filing of plan and disclosure statement and continue hearing on motion for relief from stay to date and time of hearing on disclosure statement."

12.  Counsel for the debtors advised that they did indeed intend to file a plan and disclosure statement.  The Court therefore set a deadline of February 17, 2026 for the debtors to file a plan and disclosure statement and said that it would issue an order to show cause re conversion or appointment of a chapter 11 trustee and set a hearing on that order to show cause (the "OSC") for February 24, 2026.  And, in the interim, the Court again

continued the hearing on the Sunflower Motion, this time to February 24, 2026.

13. At the February 24, 2026 hearing on the OSC, the Court offered the following tentative ruling:

    a. At the January 20, 2026 hearing on Sunflower's motion for relief from stay, the debtors made all of the same representations that are set forth in their reply to the OSC (filed February 11, 2026). The only new information is that Mr. Guerrero has accepted an offer from the government to drop all evasion charges in exchange for his acceptance of a lesser charge of an overt act. At that time, the Court instructed the debtors to file a plan and disclosure statement by February 17, 2026 . . . .

    b. Mr. Guerrero may be making progress with regard to his criminal sentencing, but he has not shown any meaningful progress in this chapter 11 case. He still has the looming issue of the $4.2M tax claim that he claims prevents him from refinancing. It should not prevent him from proceeding with a sale free and clear and it should not stand in the way of his proposing a plan, yet he has done neither.

    c. Convert case to chapter 7. Perhaps a chapter 7 trustee, who isn't distracted by sentencing issues, can get this case moving forward.

14. Following the February 24, 2026 hearing on the OSC, the Court did in fact convert the case to chapter 7, but it still did not grant relief from the automatic stay. Instead, the Court again continued the hearing on the Sunflower Motion (to March 31, 2026), to give the trustee an opportunity to evaluate whether he wanted to proceed with a sale of the property or to abandon the property.

15. At the March 31, 2026 hearing on the Sunflower Motion, the trustee requested additional time to evaluate how he wanted to proceed, and the Court again continued the hearing on the Sunflower Motion -- this time to May 5, 2026. However, the Court eventually took the May 5 hearing on the Sunflower Motion off calendar because, on April 22, 2026, the Court approved a stipulation between the trustee and Sunflower that gave

Sunflower relief from the automatic stay but prohibited Sunflower from proceeding with a foreclosure for 60 additional days to give the trustee a further opportunity to attempt to enter into an escrow to sell the Property for an amount sufficient to pay off Sunflower in full.

16. In other words, none of the alleged misrepresentations contained in the Sunflower Motion led the Court to grant relief from stay with regard to the Property improvidently.  The Court gave first the debtors and then the trustee more than ample opportunity to take steps to avoid a foreclosure, and it was only after the trustee entered into a stipulation with Sunflower for relief from stay– almost 9 months after the Sunflower Motion was originally filed and more than 11 months after the bankruptcy case was originally filed -- that the Court granted such relief.

17. To the extent that the Emergency Motion seeks reconsideration of the Court's decision to convert the case to chapter 7, the Emergency Motion must be denied.  The debtors had more than ample opportunity to move forward with a plan of reorganization, a sale of the Property or a refinancing, but failed to proceed diligently to pursue any of these options.

18. The Motion also seeks an order granting the debtors 30 days to retain new counsel.  It is unclear what relief the debtors are seeking by way of this request or why they believe they need this Court's permission to retain counsel.

19. On April 16, 2026, the debtors' chapter 11 counsel, Thomas Ure, filed a motion to withdraw.  According to that motion, the engagement letter between Mr. Ure and the debtors provided for his employment to terminate automatically if and when the case was converted to chapter 7. The motion therefore sought an order relieving Mr. Ure as counsel for the debtors effective April 1, 2026, as this was the date of the conversion.

20. To ensure that debtors had an adequate opportunity to obtain replacement counsel, the Court set Mr. Ure's motion to withdraw for hearing on May 13, 2026.  Following that hearing, by order entered May 19, 2026 (docket no. 148), the Court granted Mr. Ure's motion to withdraw effective as of the date his motion to withdraw was filed – April 16, 2026.

21. Approximately two months have passed since Mr. Ure ceased to be debtors' counsel and the debtors have yet to retain a replacement.  The debtors do not need an order from this Court to enable them to hire new counsel.  If they would like to retain new counsel, they should do so.  The debtors can retain replacement counsel at any time, but the Court will not prevent any other party from moving forward or exercising any of its rights or remedies while they do so.

In light of the foregoing, **IT IS HEREBY ORDERED** that the Emergency Motion is denied in its entirety.

###

Date: June 15, 2026

Sheri Bluebond
United States Bankruptcy Judge